SYLVIA RUSH, Plaintiff, *v.* CURTISS-WRIGHT EXPORT CORP., Defendant.

Supreme Court, Trial Term, New York County, January 31, 1941.

*Garey & Garey* [*Milton I. Hauser* of counsel], for the plaintiff.

*Spence, Hopkins, Walser & Hotchkiss* [*K. M. Spence* of counsel], for the defendant.

CAREW, J. From 1909 until February 19, 1934, the plaintiff's assignor was an officer in the United States Navy, especially assigned to aviation personnel, material and actual flight. During the last two or three years of his service he had been assigned by the navy department to advise the government of the Republic of Colombia, S. A., as to all the phases of his specialty. In the performance of this duty he spent some time in Colombia, became acquainted with its officials, civil, military and naval, their past, present and future plans, situations and conditions; through his office and service he became acquainted with the aeroplane industry in the United States and its various manufacturers, among others the defendant Curtiss-Wright Export Corp. and its affiliated companies. During his service as an officer of the United States Navy assigned to aid and advise Colombia he considered a proposal to resign from the United States Navy and to take a contract with the Colombian government to devote himself entirely for one year to its aviation program purchases and its aviation defense, military and naval, for the sum of $21,000. Discussing this proposal with the then president and vice-president of the defendant corporation, which was making for and selling and delivering to the Colombian government military and naval aeroplanes and parts, he told the president and vice-president of the defendant company that he could not afford to accept this Colombian proposal as resignation would end the possibility of his retirement with three-fourths pay; that he could not sacrifice that possibility after twenty-five years' service when he only had five years to go to retire for the $21,000 offered by Colombia. The then president and vice-president of the defendant company urged him to resign and accept the Colombian offer, and promised him if he did so they would supplement the Colombian offer of $21,000 for one

year by commissions, perquisities, bonuses, etc., on what they might sell to Colombia, amounting to approximately $41,000 for that year.

The plaintiff's assignor testifies that he then informed the consul for Colombia at New York city and the chief of staff of the Colombian army of the proposal of the defendant corporation to pay him $41,000 in addition to what Colombia paid him, and that they did not object. I do not believe this testimony, and I distinctly do not believe that either the consul or the chief of staff had any authority to consent to any such arrangement between the defendant corporation and the plaintiff's assignor.

The defendant corporation does not dispute or deny that its then president and vice-president made this bargain with the plaintiff's assignor, its purchasing agent. The corporate defendant does not call its president or vice-president to deny anything the plaintiff's witnesses testified to. I am, therefore, obliged to find that this obviously corrupt and illegal contract was made. Pursuant to it the plaintiff's assignor resigned from the United States Navy, lost his possible retirement pay, entered on the performance of his contracts with the Colombian government and the defendant corporation both in Colombia and in the United States, made purchases and inspections and accepted and passed deliveries of aeroplanes and parts by the defendant corporation to the Colombian government, some of which were defective and had to be repaired and replaced. The defendant corporation by its officers, past and present presidents and vice-presidents, delayed and declined to pay the plaintiff's assignor the promised bribe, giving different excuses, all of which being acquiesced in by the plaintiff's assignor for a long time show the guilty consciences of the parties, e. g., " The danger of exposure by a U. S. Senate investigation committee," " that the time was not opportune," until finally counsel for the defendant denounced the contract as illegal and criminal.

Obviously neither the plaintiff nor her assignor can collect on this contract, but it by no means follows that the defendant corporation can escape payment of the promised $41,000 for which it received and benefited more than that by the corrupt indulgence of the plaintiff's assignor in his purchases, inspections, approvals and acceptances of the defendant's aeroplanes and parts delivered to the Colombian government from February 19, 1934, until February 19, 1935. I hold, therefore, that the plaintiff's assignor and the plaintiff each held and holds this contract with the defendant corporation for the benefit of the Colombian government as

constructive trustees thereof, and I direct judgment in favor of the plaintiff as a constructive trustee for the Colombian government against the defendant Curtis Wright Export Co. for the sum of $41,000, with interest from February 19, 1934, and costs, to be paid to her as such trustee for the Colombian government by the defendant Curtiss-Wright Export Corp. upon her giving a surety company bond for that amount, with interest, to secure payment by her to the Colombian government of the amount of such judgment when collected.

The clerk of this court is hereby directed to send to the Secretary of State of the United States a certified copy of judgment roll herein, of this decision and of the findings of fact and conclusions of law, for transmission by him to the Colombian government.